# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| REBECCA BLANQUET,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. EDCV 10-0181-JEM<br><br>MEMORANDUM OPINION AND ORDER<br>AFFIRMING DECISION OF THE<br>COMMISSIONER OF SOCIAL SECURITY |

## PROCEEDINGS

On February 19, 2010, Rebecca Blanquet ("Plaintiff" or "Claimant") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability benefits under Title XVI of the Social Security Act.  On August 23, 2010, the Commissioner filed an Answer to the Complaint.  On October 20, 2010, the parties filed a Joint Stipulation ("JS") setting forth their positions and the issues in dispute.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

**BACKGROUND**

Plaintiff was born on January 25, 1982, and was 22 years old on her alleged disability onset date of December 22, 2004.  (AR 62.)  Plaintiff filed an application for Supplemental Security Income benefits on February 28, 2005.  (AR 62-64, 335.)  Plaintiff claims she is disabled due to a traumatic brain injury, pituitary tumor, diabetes, and hypopituitarism.  (AR 70.)  Plaintiff has not engaged in substantial gainful activity since at least February 28, 2005.  (AR 93, 335.)

Plaintiff's claim was denied initially on August 3, 2005 (AR 31-35), and on reconsideration on November 1, 2005.  (AR 39-43.)  Plaintiff filed a timely request for hearing on November 22, 2005.  (AR 44.)  Plaintiff appeared with counsel and testified at a hearing held on April 25, 2007, before Administrative Law Judge ("ALJ") John W. Belcher.  (AR 278-326.)  The ALJ issued a decision denying benefits on September 14, 2007 (the "Prior Decision").  (AR 22-30.)  After the Appeals Council denied Plaintiff's request for review (AR 4-6), Plaintiff appealed to this Court.  On December 23, 2008, a United States Magistrate Judge issued an order vacating the Prior Decision and remanding for further administrative proceedings (the "Remand Order").  (AR 452-60.)

Following remand, a different ALJ, Jay Levine, held a hearing on July 8, 2009 (AR 880-911), and issued an unfavorable decision on November 27, 2009 (the "Post-Remand Decision").  (AR 333-43.)  The ALJ determined that Plaintiff has the severe impairments of post-operative craniopharyngioma, panhypopituitarism (controlled), obesity, type II diabetes, a mood disorder, and a cognitive disorder, but is capable of performing her past relevant work as an office clerk.  (AR 335, 341-42.)  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since the date her application was filed.  (AR 343.)  The Appeals Council did not review the ALJ's decision, which became the final decision of the Commissioner.  See 20 C.F.R. § 404.984(d).  Plaintiff then commenced the present action.

**DISPUTED ISSUE**

As reflected in the Joint Stipulation, there is one disputed issue:  whether the ALJ complied with the Remand Order to properly consider a State Agency physician's opinion. (JS at 3.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**THE SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen v. Yuckert, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1]  20 C.F.R. § 416.920(e).  The RFC must account for all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the

---

[1]Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1   claimant, the burden shifts to the Commissioner to show that the claimant may perform other

2   gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a

3   finding that a claimant is not disabled at step five, the Commissioner must provide evidence

4   demonstrating that other work exists in significant numbers in the national economy that the

5   claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. §

6   416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and

7   entitled to benefits.  Id.

8                                   **DISCUSSION**

9       **A.      The ALJ's Decision**

10          In this case, the ALJ determined at step one of the sequential evaluation that Plaintiff

11  has not engaged in substantial gainful activity since February 28, 2005, her application date.

12  (AR 335.)

13          At step two, the ALJ determined that Plaintiff has the following severe impairments:

14  post-operative craniopharyngioma; panhypopituitarism, controlled; obesity; type II diabetes; a

15  mood disorder; and a cognitive disorder, not otherwise specified.  (AR 335.)

16          At step three, the ALJ found that Plaintiff does not have an impairment or combination

17  of impairments that meets or medically equals one of the listed impairments.  (AR 335-36.)

18          The ALJ found that Plaintiff has the RFC to perform light work except she "is limited to

19  walking two hours out of an eight-hour work day and can sit for six hours; she is limited to

20  occasional climbing, balancing, stooping[,] kneeling, crouching, and crawling.  [She] is

21  precluded from working at heights [or] on dangerous equipment; she is precluded from

22  work[ing in] environment[s] with temperature extremes; she is precluded from work that

23  requires production quotas or piece work type assembly; and [she] is limited to work with a

24  four to five step work process."  (AR 336.)

25          At step four, the ALJ relied on the testimony of a vocational expert in finding that

26  Plaintiff could perform her past relevant work as an office clerk.  (AR 341-42.)  The ALJ also

27  made an alternative finding that there are other jobs that exist in significant numbers in the

28

1   national economy that Plaintiff can perform.  (AR 342.)  The ALJ therefore concluded that

2   Plaintiff is not disabled.  (AR 342-43.)

3          **B.     The ALJ Properly Evaluated the State Agency Physician's Opinion.**

4          Plaintiff argues that the ALJ failed to comply with the Remand Order's instruction to

5   consider properly the opinion of a State Agency physician.  (JS at 3-5, 9-10.)  The Court

6   disagrees.

7                  **1.     Pertinent Law**

8          In Social Security cases, courts employ a hierarchy of deference to medical opinions

9   depending on the nature of the services provided.  Courts distinguish among the opinions of

10  three types of physicians:  those who treat the claimant ("treating physicians") and two

11  categories of "nontreating physicians," namely those who examine but do not treat the

12  claimant ("examining physicians") and those who neither examine nor treat the claimant

13  ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  A treating

14  physician's opinion is entitled to more weight than an examining physician's opinion, and an

15  examining physician's opinion is entitled to more weight than a nonexamining physician's

16  opinion.  See id.

17         Accordingly, an ALJ is "not bound by any findings made by [nonexamining] State

18  agency" physicians.  20 C.F.R. § 416.927(f)(2)(i).  The Administration recognizes, however,

19  that these individuals "are highly qualified physicians . . . who are also experts in Social

20  Security disability evaluation."  Id.  "Therefore, [an ALJ] must consider findings of State

21  agency [physicians] as opinion evidence," and "must explain in the decision the weight given

22  to the opinions of a State agency" physician.  Id. § 416.927(f)(2)(i)-(ii); SSR 96-6p (An ALJ

23  "may not ignore these opinions and must explain the weight given to the opinions in their

24  decisions."); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An ALJ is required

25  to consider as opinion evidence the findings of state agency medical consultants; the ALJ is

26  also required to explain in his decision the weight given to such opinions.").  Moreover, in

27  determining a claimant's RFC, if the ALJ's "assessment conflicts with an opinion from a

28

1 medical source,[] the adjudicator must explain why the opinion was not adopted."  SSR

2 96-8p.  An ALJ "may reject the opinion of a nonexamining physician by reference to specific

3 evidence in the medical record."  Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1988).

4         **2.    Background**

5      The dispute in this case centers on a Mental Residual Functional Capacity

6 Assessment completed by a nonexamining State Agency physician on July 14, 2005.  (AR

7 206-09.)  The physician opined, among other things, that Plaintiff was moderately limited in

8 several areas of functioning:  understanding, remembering and carrying out detailed

9 instructions; maintaining attention and concentration for extended periods; performing

10 activities within a schedule, maintaining regular attendance, and being punctual within

11 customary tolerances; sustaining an ordinary routine without special supervision; working in

12 coordination with or proximity to others without being distracted by them; and interacting

13 appropriately with the general public.  (AR 206-07.)  The physician concluded that Plaintiff

14 "can sustain simple repetitive tasks with adequate pace and persistence [and] can adapt and

15 relate to coworkers and [supervisors]," but "cannot work with [the] public."  (AR 208.)

16      The Prior Decision did not mention this assessment (AR 22-30), and the Court found

17 that the ALJ erred because he "failed to explain why he disregarded aspects of the Mental

18 Residual Functional Capacity Assessment that the State Agency psychiatrist completed on

19 July 14, 2005."  (AR 458-59 (citing AR 206-09).)  The Court therefore instructed the ALJ to

20 "either specifically reject the State Agency physician's opinion or accept the opinion and

21 explain the weight given to it in the decision."  (AR 459.)

22      As a matter of law, an ALJ must comply with a district court's remand order.  Sullivan

23 v. Hudson, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the

24 subsequent administrative proceedings is itself legal error, subject to reversal on further

25 judicial review.").  Like other errors, however, an ALJ's failure to comply with a court's

26 remand order is subject to harmless error analysis.  See Burch v. Barnhart, 400 F.3d 676,

27 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.");

28

Fuller v. Astrue, 2010 WL 4573547, at *6 (D. Ariz. Nov. 5, 2010) (applying harmless error analysis to ALJ's failure to comply with a court's remand order).

### 3.    Analysis

In the Post-Remand Decision, the ALJ briefly mentioned the State Agency physician's July 14, 2005 Mental Residual Functional Capacity Assessment.  (AR 341 ("On July 14, 2005, the Board certified psychiatrists reviewed the record and thought the claimant could do at least simple repetitive tasks and could relate to co[-]workers and supervisors, but could not work with the public.") (citation omitted).)  The ALJ implicitly rejected this opinion because his RFC assessment did not include several of its limitations, including the inability to work with the public.  (AR 336.)

The ALJ provided a thorough and accurate summary of the medical evidence in support of his RFC assessment.  (AR 336-41.)  He noted, for example, that clinical psychologist Dr. Pierce examined Plaintiff on June 14, 2005, and concluded that Plaintiff "could do simple repetitive tasks" but "might have problems working with others," a conclusion based on her "lackluster performance" at the evaluation.  (AR 339.)  Indeed, Dr. Pierce wrote that Plaintiff "evidences a consistently lackluster approach with testing today, including a borderline pass effort with a malingering-sensitive memory test."  (AR 622.)  The ALJ also noted that Dr. Pierce reevaluated Plaintiff on August 12, 2009, and concluded that Plaintiff "would be able to complete medium to full demand of vocational skills and to adapt to minimal changes in the work environment."  (AR 339.)  Dr. Pierce also concluded from his second examination that Plaintiff "would have milder to no apparent difficulty working effectively with others" and that "[s]he could concentrate adequately for a regular work schedule for a full workweek."  (AR 873.)

The ALJ also cited a January 11, 2007 psychological evaluation performed by Dr. Harrell Reznick.  (AR 339 (citing Exhibit 13F [AR 227-34]).)  As the ALJ noted, Dr. Reznick found that Plaintiff "appeared to exert a poor effort throughout [the] evaluation" (AR 227), and

1    concluded that Plaintiff "can perform simple and repetitive tasks with minimal supervision . . .

2    with appropriate persistence and pace over a normal work cycle."  (AR 233.)

3          The ALJ assigned great weight to the opinion of nonexamining clinical psychologist

4    Dr. Malancharuvil.  (AR 340.)  Dr. Malancharuvil reviewed the medical records and opined,

5    on July 7, 2009, that Plaintiff "is at least capable of moderately complex task[s] up to five

6    step instructions.  She is precluded from fast-paced work.  She is precluded from tasks that

7    require hypervigilance such as safety related tasks or tasks that require quick reaction time.

8    She should not operate hazardous or fast[-]moving machinery."  (AR 849.)  Dr. Malancharuvil

9    also noted that multiple physicians expressed "serious concern that [Plaintiff] did not put forth

10   adequate effort and was possibly presenting herself [as] less capable than she actually was."

11   (AR 850.)  Dr. Malancharuvil concluded that "[o]verall the records are internally consistent in

12   identifying a loss of intellectual prowess as well as the development of mood symptoms,

13   albeit manageable, as a result of her surgery in 1995.  All the doctors are consistent in

14   assigning the claimant a mild to moderate residual functional capacity."  (AR 850.)

15         Medical expert Dr. Samuel Landau testified at the 2009 hearing before the ALJ after

16   reviewing the medical evidence.  (AR 888-91.)  As the ALJ noted, Dr. Landau believed

17   Plaintiff's non-exertional limitations prevented her from climbing ladders, working at heights,

18   balancing, operating motorized equipment or machinery, and working with the public

19   "because she's susceptible to infection."  (AR 889; see AR 340.)  The ALJ explained that he

20   did not incorporate the limitation preventing Plaintiff from working with the public because

21   Plaintiff "reported she did tutoring without any precautions."  (AR 340; see AR 899-900.)

22   Aside from that limitation, the ALJ concluded Dr. Landau's testimony "is supported by the

23   evidence . . . and is given great weight."  (AR 340.)

24         The ALJ also cited a June 2, 2008 examination by psychiatrist and neurologist Dr.

25   Abejuela.  (AR 341 (citing Exhibit B23F [AR 810-16]).)  Dr. Abejuela found that Plaintiff's

26   "overall occupational and social functioning impairment is none to mild."  (AR 815.)

27

28

1    In addition to the July 14, 2005 statement of a State Agency psychiatrist, the ALJ also

2    mentioned a June 9, 2008 opinion of a different State Agency psychiatrist.  (AR 341 (citing

3    Exhibits B25F, B26F [AR 820-33]).)  The 2008 opinion concluded that Plaintiff was partially

4    credible and "fully capable of at least [simple, routine tasks]."  (AR 819.)  In sharp contrast to

5    the July 14, 2005 Mental Residual Functional Capacity Assessment, the 2008 assessment

6    noted that Plaintiff was moderately limited in only one functional area:  performing activities

7    within a schedule, maintaining regular attendance, and being punctual within customary

8    tolerances."  (AR 820-22; compare AR 206-08.)

9    It is the ALJ's role to assess and resolve conflicting medical evidence.  See Thomas v.

10   Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002).  Here, the ALJ discharged this responsibility.

11   As described above, he provided a longitudinal summary of the medical evidence and

12   explained that he gave greatest weight to the opinions of the testifying medical expert and

13   the non-testifying medical expert who reviewed the evidence and issued an opinion in July

14   2009.  (AR 336-41.)  Although he did not thoroughly discuss the 2005 State Agency

15   physician's opinion, he relied on several more recent opinions of examining and

16   nonexamining physicians, including a 2008 opinion of a different State Agency physician.

17   Plaintiff does not challenge the ALJ's evaluation of any of the other medical evidence, or the

18   ALJ's determination that Plaintiff's "statements concerning the intensity, persistence, and

19   limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the

20   . . . [RFC] assessment."  (AR 337.)  Therefore, to the extent the ALJ's failure to explicitly

21   reject the 2005 State Agency's physician can be considered error, the Court concludes that

22   the error was harmless because it was "inconsequential to the ultimate nondisability

23   determination."  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.

24   2006).

25   ///

26   ///

27   ///

28   ///

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED and that this action is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: <u>January 24, 2011</u>                                   <u>      /s/ John E. McDermott      </u>
                                                        JOHN E. MCDERMOTT
                                                        UNITED STATES MAGISTRATE JUDGE